IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBRA C. COLBERT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | CIVIL ACTION NO. 10-115- N |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

ORDER

This appeal from an adverse decision of the Commissioner of Social Security is before the court on the administrative record (doc. 12) and the briefs submitted by the parties (docs. 13, 16). Oral argument was held before the undersigned on October 27, 2010, at which Attorney Margaret Stone appeared for the plaintiff, Debra C. Colbert, and AUSA Patricia Beyer represented the Commissioner. The parties have consented to the jurisdiction of the undersigned and this action has been referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c). (*See* docs. 18, 19 ) Upon consideration of the administrative record, oral argument and the memoranda of the parties, it is ordered that the decision of the Commissioner be Reversed and Remanded.

Procedural History

Plaintiff filed an application for Supplemental Security Income ("SSI") on December 21, 2005[1], alleging disability due to degenerative disc disease, bone spurs, fibromyalgia, rheumatoid

---

[1] Plaintiff filed a prior claim for SSI benefits on December 17, 2001, which was denied on December 27, 2002, following a hearing. In the instant case, the ALJ declined to reopen the prior application; that ruling is not appealed.

arthritis, lupus and depression, beginning December 15, 2005. After denial of her claim at the initial level, plaintiff appeared before an Administrative Law Judge ("ALJ") for a hearing on April 16, 2008. In a written decision issued June 14, 2008, the ALJ found that claimant suffered from three severe impairments: fibromyalgia, rheumatoid arthritis and degenerative disc disease of the cervical spine. The ALJ denied plaintiff's claim for benefits, finding that she could still perform her past relevant work as a cashier. The Appeals Council thereafter denied review of the ALJ's determination. The instant action was timely filed.

Scope of Judicial Review

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp. 478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir. 1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. In other words, "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to

justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999. With this legal framework in mind, the court now turns its focus to claimant's assignments of error.

Plaintiff's Claims

1. The ALJ failed to properly evaluate the plaintiff's subjective complaints of pain pursuant to the Eleventh Circuit pain standard. Wilson v. Barnhart, 284 F. 3d 1219 (11th Cir. 2002); Holt v. Sullivan, 921 F.2d 1221 (11th Cir. 1991).

2. The ALJ failed to give controlling weight to the plaintiff's treating physicians' opinions. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997) and 20 CFR § 416. 927(d).

3. The ALJ failed to make detailed, specific findings regarding the physical and mental demands of the plaintiff's past relevant work pursuant to *Social Security Ruling 82-62*. Lucas v. Sullivan, 918 F. 2d 1567 (11th Cir. 1990); Schnoor v. Bowen, 816 F. 2d 578 (11th Cir.1987).

Facts[2]

At the time of filing her claim, plaintiff was 43 years of age, which agency regulations

---

[2] The court's statement of facts is drawn primarily from the findings of the ALJ, as well as the portions of the administrative record deemed relevant.

3

classify as a younger individual. She has the equivalent of a high school education and past relevant work as a cashier. Plaintiff testified at the hearing that she has chronic pain and swelling in numerous locations which prevents her from sitting, standing or walking for longer than 20-30 minutes at a time, or lifting significant weights and interferes with her sleep. Plaintiff also stated that her medications make her sleepy and nauseated. She testified that she mostly sleeps during the day, requires some assistance with caring for her personal needs and for caring for her mentally handicapped adult daughter, but is able to prepare simple meals, drive a car, and do light household chores and shopping.

Following an on-the-job injury to her neck in 2000, plaintiff was treated by workers compensation doctors for several years. Dr. Edward Schnitzer, a physical medicine and rehabilitation specialist, treated plaintiff for neck and right shoulder pain from June 2004 through March 2005, and again in October 2005. Dr. Schnitzer diagnosed plaintiff with myofascial neck pain and cervical degenerative disc disease, and prescribed non-steroidal anti-inflammatory drugs ("NSAIDS") and a muscle relaxant as well as physical therapy and trigger point injections. On his referral, plaintiff was given a functional capacities evaluation on November 1, 2004, which found, *inter alia*, "less than max effort and inconsistencies" but found her able to return to return to "light duty." Shortly thereafter, Dr. Schnitzer found that plaintiff had reached maximum medical recovery and could return to light work on a full-time basis, subject to permanent restrictions to her ability to frequently bend, stoop, reach over her head, sit, or stand, to occasionally kneel, squat, crawl, climb stairs or ladders, walk, or perform overhead work, and to ever work at heights. Dr. Schnitzer further found that claimant could lift 15-20 pounds occasionally and 10 pounds frequently, and could push or pull up to 50 pounds occasionally and 30 pounds frequently.

4

Plaintiff was hospitalized for swelling of the right arm and was treated upon her release, beginning on June 20, 2005, at the Franklin Primary Health Center. She reported continued severe pain in her hands, back, neck, shoulders and feet; examination showed a decrease in swelling during a period of a few months. On November 3, 2005, she was referred to the rheumatology clinic. From August 2006 to February 2008, plaintiff returned to Franklin Primary Health Center for regular treatment of pain in her neck and back, and pain and swelling in her right hand, as well as some unrelated illnesses. Testing in June 2007 showed that plaintiff's rheumatoid factor and sedimentation rate continued to be elevated. Her doctor prescribed anti-inflammatory medication and referred her to a rheumatologist. X-rays of plaintiff's lumbar spine in November 2007 showed no abnormalities.

Beginning in December, 2007, plaintiff began seeing Dr. James Lawrence, a rheumatologist. X-rays taken at that time showed no abnormalities in plaintiff's cervical spine except mild anterior osteophytosis over the C3-C4 intervertebral disc space; no abnormalities in her hands or feet; and mild osteoarthritic changes in the lumbar spine at L4-L5. Dr. Lawrence's examination of plaintiff on February 1, 2008, disclosed shoulder tenderness on internal rotation, swelling of the MCP joint of the right hand and multiple tender points in the back; he diagnosed plaintiff with atypical rheumatoid arthritis and connective tissue disease, as well as a "neuropathic component," depression, chronic pain, and fibromyalgia. Blood tests in March 2008 showed highly positive results for ANA and RNP antibodies. Dr. Lawrence's examination of plaintiff in March 3, 2008, showed evidence of actual synovitis with swelling and redness in her right hand; based on recent laboratory testing, he opined that plaintiff might have a connective tissue disorder such as seronegative rheumatoid arthritis. Plaintiff was given new medications including a slow release pain medication.

Dr. Lawrence completed a Clinical Assessment of Pain form on March 24, 2008, in which he stated that plaintiff's pain was present and intractable, and was "virtually incapacitating." He further stated that physical activity would greatly increase her pain to such a degree as to cause distraction from or total abandonment of tasks, and that her pain and the side effects of her medications would totally restrict plaintiff and prevent her from functioning at a productive level of work.

The Social Security Administration sent plaintiff for a consultive examination by Dr. John Houston, which was performed on March 28, 2006. According to Dr. Houston, plaintiff stated that she had a history of depression but did not currently require treatment for that condition. Dr. Houston's physical examination of plaintiff disclosed paraspinal tenderness in the cervical, thoracic and lumbar areas, edema at the +1 level in her lower extremities, pain with range of motion testing in the shoulders, and joint tenderness in the third and fourth MCP joints of her right hand. He also found that plaintiff had normal range of motion in all joints, normal motor strength in all major muscle groups, no atrophy, grip strength of 4 out of 5 and intact fine motor dexterity in her hands, and no abnormalities in her reflexes, gait, or bilateral seated straight leg raises. Dr. Houston gave his opinion that plaintiff suffered from rheumatoid arthritis, fibromyalgia, neck pain/degenerative disc disease of the cervical spine, and depression; he further opined that she suffered from chronic pain but, with regard to work activities, had no impairment in her ability to sit, stand, walk short distances, lift or carry light loads, handle objects, hear or speak.[3]

The Social Security Administration also sent plaintiff for a consultive orthopedic

---

[3] Apparently based on these findings, in April 2006 a disability consultant working for the state agency concluded that plaintiff could perform work at the medium exertional level with no postural, manipulative, visual, communicative, or environmental limitations.

examination by Dr. William Crotwell, III. Plaintiff stated that she was on the following medications at that time: Lortab, Phenergan, Minagest, Trazodone and "Citaprel". Dr. Crotwell found that plaintiff could bend forward and backwards 50 degrees with "poor effort," but could bend easily and take her socks off without difficulty, which he deemed inconsistent. He found no tenderness or spasms, and found that reflexes, motor and sensory were normal in her lower extremities; that her upper extremities displayed had normal motor response and grip strength, but had a positive Tinel's in her right hand and a negative Phalen's, no muscle atrophy, full range of shoulder movement, and no major swelling in her right hand; and that lumbar x-rays showed no arthritis or disc space collapse. He opined that plaintiff had probable carpal tunnel syndrome of mild to moderate severity affecting her right hand, possible mild impingement syndrome of the right shoulder, and lumbosacral strain with no objective evidence. Dr. Crotwell also completed a Physical Capacities Evaluation ("PCE") form in which he stated his opinion that plaintiff could sit, stand or walk for 2 hours at a time, each up to a total of eight hours in an eight hour workday, could continuously lift 21-25 pounds, continuously carry 11-20 pounds, frequently lift 26-50 pounds, occasionally lift 51 to 100 pounds, frequently carry 21-15 pounds, and occasionally carry 26-50 pounds. He placed no limitation on repetitive hand or foot movements, and indicated that she could continuously reach and frequently bend, squat, crawl and climb. He noted that she had moderate restriction of activities involving unprotected heights but no significant environmental restrictions in any other area.

The record also contains records concerning diagnosis and treatment of plaintiff's depression. Beginning in September 2006, plaintiff was treated at Altapointe for major depressive disorder, recurrent moderate, and was prescribed medication for her condition; however, as of February 1, 2007, plaintiff reported that she had not taken the anti-depressant

7

medication due to problems in obtaining insurance authorization. She was seen by two psychiatrists: Dr. Barry Amyx until August, 2007, and by Dr. Marianne Saitz thereafter. Plaintiff complained of depression related symptoms, but neither doctor observed abnormal behavior or affect during the plaintiff's visits. At plaintiff's February 2008 visit, Dr. Saitz noted that plaintiff's mood was normal but also indicated "mood swings," and reported that plaintiff's affect was appropriate, her appetite and sleep were "good, fair," that her memory and concentration were unimpaired, and that her thoughts were logical and coherent. On March 31, 2008, Dr. Sainz completed a Mental Residual Functional Capacity form in which she stated that plaintiff suffered from marked impairments in her activities of daily living, social functioning, concentration, persistence and pace, and ability to respond to customary work pressures, as well as marked impairments in her ability to understand, remember and carry out instructions in a work setting, to respond appropriately to supervision and co-workers, and to perform simple and repetitive tasks.

The Social Security Administration sent plaintiff for a consultive psychiatric evaluation in October 2007 by Dr. C. E. Smith, who found that plaintiff was appropriately dressed and groomed, was alert but, in the beginning part of the interview, was sullen, impatient and irritable. He stated that her speech was relevant and coherent, that she showed no thinking disorder or indication of hallucinations, that she was euthymic and showed a wide range of affect, that she was well oriented and that her memory was intact. He stated that plaintiff could understand, remember and carry out even complex instructions. He diagnosed plaintiff with depressive disorder NOS and completed a form concerning his opinions of her mental capabilities and limitations in which he stated that she suffered mild impairments of her ability to respond appropriately to supervisors, co-workers and customers or other members of the general public,

but found no impairment of her ability to understand, remember and carry out detailed or complex instructions, to deal with changes in a routine work setting, to maintain attention, concentration or pace for periods of at least two hours, to maintain social functioning, or to maintain activities of daily living.

## Analysis

*Evaluating Complaints of Pain*

Plaintiff asserts that the ALJ incorrectly applied the standard enunciated by the Eleventh Circuit for analyzing a claimant's complaints of pain. The Eleventh Circuit has held that:

> [i]n order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See* Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See* Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); *see* 20 C.F.R. § 404.1529. The ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms: but discredited plaintiff's testimony concerning the intensity, persistence and limiting effects of her pain.

The ALJ provided the following rationale for discrediting plaintiff's complaints of pain:

> [t]he undersigned finds that good cause exists to justify not assigning any significant evidentiary weight to the opinions of the claimant's treating rheumatologist, Dr. Lawrence, in the Clinical Assessment of Pain form at Exhibit 14F. Dr. Lawrences' opinions are not supported by objective clinical examinations findings [sic] establishing a disorder of such severity as to produce disabling pain. Since pain is wholly subjective in nature, the undersigned must rely on documentation of persistent reliable manifestations of a disabling loss of functional capacity and/or physical examination findings such as loss of range of motion, muscle weakness, muscle atrophy, joint deformity, muscle spasm, or

9

sensory or motor disruption, to substantiate the claimant's complaints of debilitating pain. As noted above, Dr. Schnitzer, Dr. Houston, and Dr. Crotwell have all opined that the claimant is capable of performing work activities at least at the light exertional level despite her physical impairments. Dr. Lawrence did not offer any opinion as to the claimant's physical capacities and limitations. While Dr. Lawrence and other physicians have, at times, noted some abnormal physical examination findings such as limited range of motion in the claimant's neck, lower back, and right shoulder, at other times, the claimant has had essentially full range of motion of her cervical spine and right shoulder and other aspects of her physical examination have been consistently within normal limits. Objective diagnostic testing of the claimant's hands and feet have failed to demonstrate any degenerative changes and, although diagnostic studies confirm the existence of degenerative disc disease of the claimant's cervical spine, there is no objective medical evidence to indicate that the claimant suffers from any severe acute or chronic vertebrogenic related disorders such as disc herniation, nerve root impingement, spinal stenosis, or facet joint hypertrophy. Moreover, the evidentiary record shows that there have been no hospitalizations or emergency room visits for the claimant's alleged symptomatology during the relevant period under consideration and that the claimant's pain has been managed conservatively with medications.

. . .

While it is credible that the claimant has experienced some pain and physical limitation secondary to her rheumatoid arthritis, fibromyalgia, and cervical degenerative disc disease, it is not credible that she has experienced the level of symptomatology and functional limitation to the extent she has alleged. … The evidentiary record shows that the claimant was treated by a rheumatologist in 2003 and 2004 but ceased said treatment sometime during 2004. On November 3, 2005, the claimant was referred to a rheumatologist by her physician at the Franklin health clinic but the record does not reflect that she resumed treatment by the rheumatologist until December 2007. It is also noteworthy that, following her November 3, 2005 visit to the Franklin health center, the claimant did not seek medical treatment again until six months later in May, 2006. Although the record indicates that the claimant was prescribed pain medications and non-steroidal anti-inflammatory medications by her physician at the Franklin health center during the remainder of 2006 and 2007, the claimant did not begin receiving specific treatment for rheumatoid arthritis until she began seeing Dr. Lawrence in December, 2007. The fact that there are significant gaps in medical treatment during 2—5 and 2006, as well as the fact that the claimant failed to seek specialized treatment for her condition until two years after it was recommended that she resume said treatment, undermines her credibility with respect to the severity, frequency, and duration of her alleged symptomatology.

Doc. 12 at 28-29.

After restating the findings of Drs. Schnitzer, Houston, and Crotwell that plaintiff could

perform work at the light exertional level, the ALJ continued:

> The claimant's ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical impairments are not totally disabling. …[t]he claimant admitted that she is able to do some light household chores, that she is able to prepare simple meals, that she is able to do light shopping, and that she is able to drive an automobile. The record also reflects that she has remained able to manage her household finances and care for her adult mentally handicapped daughter with some assistance from others. Additionally, in October, 2007 the claimant told Dr. Smith that she watched television and read her Bible during the day and that she sometimes attends church. …
>
> Although the claimant testified to adverse effects of medications and stated that she had to lie down most of the day, the actual medical evidence of record does not confirm any allegations of adverse medication side effects. Moreover, even if the claimant had voiced complaints of medication side effects to treating physicians, it is reasonable to expect that ameliorative measures would have been taken to alleviate said effects, such as altering the dosages of medications or changing medications.

Id. at 29-30.

Despite finding that the plaintiff's conditions could reasonably be expected to cause pain, the ALJ has articulated explicit and adequate reasons for discrediting plaintiff's testimony concerning the extent of her pain, as required under the Eleventh Circuit's pain standard. It is not the role of this reviewing court to reweigh the evidence, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990), and the court finds that the ALJ's findings are supported by substantial evidence, as that phrase is defined in applicable case law. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)("more than a scintilla, but less than a preponderance"); Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004)("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."). Because the ALJ properly explained his decision to discount plaintiff's subjective complaints of pain, and that decision was supported by substantial evidence—except as noted below—the court does not find plaintiff's first ground for appeal to be a valid basis for remand.

11

*Treating Physician's Opinion*

Plaintiff's next claim is that the ALJ improperly rejected the opinions of certain of her treating physicians concerning her physical and mental limitations. The Eleventh Circuit has held that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003). It defines 'good cause' as existing where the opinion of the treating physician is not bolstered by the evidence, where evidence supports a contrary finding, or where the opinion is conclusory or inconsistent with the doctor's own records. Id.

*--Physical Limitations*

As with a plaintiff's subjective reports of pain, an ALJ is not required to believe all doctor's opinions or the RFC forms which they may submit. Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996). "Sarchet testified that her pain has virtually immobilized her but of course the administrative law judge did not have to believe her. If the administrative law judge believed the medical reports that found that Sarchet has enough strength to work and disbelieved Sarchet's own testimony, this would compel the denial of the application for benefits. We cannot say that this combination of belief and disbelief would be unreasonable but we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." Id., at 307.

In Sarchet, Chief Judge Posner examined fibromyalgia in detail:

[F]ibromyalgia, also known as fibrositis—[is] a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the

12

> Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia)[4] that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307.

In Somogy v. Commissioner of Social Security, 366 Fed.Appx. 56, *7 (11th Cir. 2010) (unpublished), the Eleventh Circuit overturned the ALJ's decision rejecting a treating rheumatologist's opinions concerning the nature and extent of a claimant's pain arising from fibromyalgia, where the ALJ's decision was made on the basis that there was no objective evidence of the degree of pain.

> We also find unpersuasive the ALJ's only other stated reason for discounting Dr. Barakat's RFC, namely, that the limitations imposed therein "are based primarily upon [Somogy's] subjective complaints." ... We, along with several other courts, have recognized that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," and that the "hallmark" of fibromyalgia is therefore "a lack of objective evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); *see also* Rogers v. Comm'r of Social Sec., 486 F.3d 234, 243 (6th Cir. 2007) (stating that "fibromyalgia patients present no objectively alarming signs"); Green-Younger v.

---

[4] Plaintiff Colbert was found to react to 12 of the fixed "trigger points."

13

> Barnhart, 335 F.3d 99, 108 (2nd Cir. 2003) (explaining that "there are no objective tests which can conclusively confirm [fibromyalgia]" (quotation marks and citation omitted)); Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (noting that "[t]here are no laboratory tests for the presence or severity of fibromyalgia"). **The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations**. *See* Green-Younger, 335 F.3d at 105-08 (holding that because fibromyalgia is "a disease that eludes [objective] measurement," ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence). … Given the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby. *See* id. at 107.

Id. (emphasis added); *see also* Burroughs v. Massanari, 156 F. Supp.2d 1350, 1367 (N.D. Ga. 2001) (noting that a rheumatologist is more qualified to diagnose fibromyalgia and determine its effects); 20 CFR § 416. 927(d)(5) ("we generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").[5] While there are factual distinctions between the ALJ's determination in Somogy and that in the instant case, the distinctions appear to be minimal; the primary justification for the rejection of the RFC opinion of plaintiff's rheumatologist, Dr. Lawrence, was the lack of objective evidence of the level of plaintiff's pain. Most of the rest of the ALJ's particular arguments, when looked at closely, return to his discomfort with the lack of objective evidence.

The Somogy decision took exception to the ALJ's findings that there were no objective findings to support the diagnosis of fibromyalgia, pointing to parts of the record that undermined

---

[5] Presuming without deciding that Dr. Schnitzer, the physician to whom plaintiff was referred by her employer's worker's compensation carrier for treatment of an on-the-job injury to her neck, can reasonably be considered to have been a "treating physician" in connection with her complaints of pain throughout her entire body, the opinions of plaintiff's rheumatologist concerning her rheumatoid arthritis and fibromyalgia and their effects on her whole body would generally be entitled to greater weight.

14

that claim. In the instant action, the ALJ does not reject the diagnosis, merely the rheumatologist's findings concerning the level of pain suffered by Colbert. In that regard, the Somogy court held that "[o]ther than the lack of objective medical findings, there is nothing in the record to suggest that Somogy did not suffer the degree of pain she reported or that her doctors should have disbelieved her complaints." Id. at *8.

The court in Somogy pointed out plaintiff's consistent complaints of pain and fatigue and consistent wide-ranging treatment over a period of years and the plaintiff's testimony that, though she could do various household chores, such work was only possible on one of her "good days", of which she had one for every three "bad days." The court also rejected the ALJ's finding that the rheumatologist's RFC assessment was inconsistent with the medical record; the Court of Appeals reviewed the record and found that the RFC assessment was consistent with plaintiff's repeated reports of pain, as well as other physicians notes showing limited range of motion, pain on palpation of tender points, episodic diffuse fatigue, decreased sensations in feet and legs, decreased ankle reflexes, mild scoliosis, abnormal gait and an inability to heel-to-toe walk.

In the instant case, the ALJ acknowledges that plaintiff Colbert "has a history of treatment for widespread musculoskeletal pain in her neck, shoulders, hips and back, with trigger points in her shoulder, neck and hip areas" and was diagnosed with and treated for fibromyalgia as well as degenerative disc disease and rheumatoid arthritis. She, too, consistently complained of pain and was treated over a period of several years. Her treatment modalities included pain medication, anti-inflammatories, muscle relaxers, physical therapy and trigger point injections. While treatment notes of some of plaintiff's doctors indicate that she had full range of motion, others reflect limitations in her range of motion; this is consistent with the sporadic pain of which

15

she consistently complained. The medical records also includes references to decreased sensation in plaintiff's right hand and, from 2005 through 2008, on at least two occasions, swelling in the right hand, localized in the MCP joints. On the grounds stated, the court cannot accept the ALJ's conclusion that the opinions of plaintiff's treating rheumatologist "are not supported by objective clinical examinations findings establishing a disorder of such severity as to produce disabling pain." Doc. 12 at 28. The ALJ's decision to give no significant weight to the treating rheumatologist has not been shown to have been supported by substantial evidence, and the ALJ's determination of plaintiff's level of pain and residual functional capacity are thus also not shown to have been supported by substantial evidence. Remand is appropriate as to this assignment of error.

--*Mental Limitations*

The ALJ also rejected opinions concerning plaintiff's mental limitations from her treating psychiatrist and her physical limitations from her treating rheumatologist. With regard to her mental impairments, plaintiff points to the mental RFC form completed by Dr. Sainz, which provided that plaintiff suffered marked impairments in all functional areas due to depression secondary to her pain. The ALJ discounted Dr. Saitz' opinion because her opinions included in the RFC form were not supported by plaintiff's mental health records.

> The records show that Dr. Amyx, the claimant's treating psychiatrist from September, 2006 through August, 2007, consistently noted that the claimant's mood was normal, that her affect was appropriate to situation, that her sleep and appetite were fair, that her memory and concentration were unimpaired, and that her thoughts were logical and coherent. Dr. Saitz even noted these same normal findings at her February 12, 2008 visit with the claimant, one month before she completed the mental residual functional capacity questionnaire. Furthermore, Dr. Saitz' opinions that the claimant has "marked" limitation in all relevant areas of mental functioning is inconsistent with the claimant's reported activities of daily living and with the level of mental health treatment she has required. For example, the record shows that the clamant has no restriction in her activities of daily living because of any mental impairment and that she has remained able to

16

>run a household and attend to not only her own needs, but also to those or her adult mentally handicapped daughter. The level of impairment described by Dr. Saitz is indicative of an individual who would be unable to function outside a highly supportive living arrangement, yet the record establishes that the claimant has only been seen at the mental health center once every three months and she has had no documented crisis events or psychiatric hospitalizations.

Doc. 12 at 26-27.

Despite the determination that the case should be remanded to the Commissioner, the court finds it appropriate to address briefly the plaintiff's contention concerning the ALJ's rejection of the opinion of her treating psychiatrist. Unlike the medical findings relatd to plaintiff's physical limitations, particularly as related to her fibromyalgia and pain, the ALJ's rejection of plaintiff's treating psychiatrist's opinion that plaintiff suffered from "marked" limitations in every area of functioning is properly supported by the record. The records of plaintiff's mental health treatment—particularly the lack of objective evidence or even prior opinion or treatment for particularly serious depression—are such that the ALJ could properly determine that they were inconsistent with Dr. Amyx's opinion that plaintiff suffers limitations of that magnitude. Plaintiff has shown herself able to function to a degree that is adequate to support the ALJ's decision that her ability undermines her psychiatrist's opinion concerning the level of mental impairment suffered by plaintiff. On remand, the court does not deem it necessary for the Commissioner to revisit this aspect of his prior decision.

--*Specific Job Requirements*

Plaintiff next asserts that the ALJ's written decision should have contained findings setting forth the specific requirements of her past relevant work as a cashier, pursuant to Social Security Ruling 82-62 and Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). It is not necessary for the court to determine whether or not this purported deficiency would warrant remand, given the existence of records setting forth plaintiff's version of the job requirements

17

and the ALJ's reliance on the testimony of the Vocational Expert; the court will simply note that any technical deficiency may be readily remedied on remand.

## Conclusion

For the foregoing reasons, it is hereby ORDERED that this action is REMANDED to the Commissioner for further proceedings consistent with this opinion, pursuant to 41 U.S.C. § 405(g).

DONE and ORDERED this 15th day of December, 2010.

/s/   Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE